# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) OSAGE PIPE LINE COMPANY, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>(1) RSUI INDEMNITY COMPANY;<br>(2) HAMILTON INSURANCE DAC; *and*<br>(3) COLONY INSURANCE COMPANY,<br><br>*Defendants*. | Civil Action No.  CIV-23-592-G<br>_____ |

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff Osage Pipe Line Company, LLC ("Osage") brings this Complaint against RSUI Indemnity Company ("RSUI"), Hamilton Insurance DAC ("Hamilton"), and Colony Insurance Company ("Colony").

### PRELIMINARY STATEMENT

1. This action stems from RSUI's breach of contract as a result of its wrongful and improper refusal to reimburse Osage for sums that Osage was legally obligated to pay as damages because of third party property damage from a pipeline incident that occurred in Payne County, Oklahoma on July 8, 2022. The land where the incident occurred is within the historical boundaries of the Sac and Fox Nation, a federally recognized Indian tribe. According to the Department of the Interior's Bureau of Indian Affairs, that land was allotted to members of the Sac and Fox Nation and is restricted tribal land held by a landowner who is a member of the Sac and Fox Nation.

2. In addition to damages for RSUI's breach of contract, Osage also seeks a declaration that its other excess insurers, Hamilton and Colony, owe reimbursement to Osage upon exhaustion of the RSUI Policy.

## PARTIES

3. Plaintiff Osage is a limited liability company organized under the laws of State of Delaware with its principal place of business in Texas.

4. Defendant RSUI is a New Hampshire corporation with its principal place of business in Georgia.

5. Defendant Hamilton is an Ireland designated activity company with its registered address in Dublin, Ireland.

6. Defendant Colony is a Virginia corporation with its principal place of business in Illinois.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1331. While this dispute involves insurance claims arising under state law, it also involves restricted tribal land so the outcome of this dispute is dependent on substantial and actual questions of federal common law including the proper measure of damages. The exercise of federal jurisdiction will not disrupt the congressionally approved balance of federal and state judicial responsibilities and is useful beyond the parties here. As to the state law claims, the Court has supplemental jurisdiction under 28 U.S.C. § 1367, and the requested declaratory relief is authorized under 28 U.S.C. §§ 2201–02.

8. The Court has personal jurisdiction over RSUI, Hamilton, and Colony because they entered into an insurance contract covering risks located within Oklahoma. Okla. Stat. Ann. tit. 12, § 2004 (West).

9. Venue is proper because a substantial part of the events giving rise to the claim occurred in the Western District of Oklahoma. 28 U.S.C. § 1391(b)(2).

## FACTS

### I. Background

10. On July 8, 2022, Osage's pipeline ruptured in Payne County, Oklahoma, resulting in the release of crude oil into a waterbody named Skull Creek and onto the surrounding property, which is restricted tribal land (the "Pipeline Incident").

11. Osage expended significant resources to contain, mitigate, and remediate third party property damage caused by the Pipeline Incident.

12. Osage now seeks reimbursement, up to the limits of the RSUI, Colony and Hamilton policies, for the sums that Osage was legally obligated to pay as damages because of third party property damage from the Pipeline Incident.

### II. The Policies

13. Osage's primary general liability insurance policy was issued by Indian Harbor Insurance Company ("Indian Harbor"). Indian Harbor issued Energy Commercial General Liability Policy No. US00084443LI22A to Osage, with a per occurrence limit of $1,000,000 (**Exhibit 1**, the "Indian Harbor Policy").

14. Osage's first-layer excess liability policy was issued by AXIS Surplus Insurance Company ("AXIS"). AXIS issued Excess Liability Policy No. P-001-

000140678-04 to Osage, with a per occurrence limit of $5,000,000 (**Exhibit 2,** the "AXIS Policy"). The AXIS Policy is a "follow form" policy, which means that it generally follows the terms, conditions, restrictions, exclusions, definitions, and endorsements of the Indian Harbor Policy.

15. RSUI is the second layer of excess liability insurance for Osage. RSUI issued Commercial Excess Insurance Policy No. NHA098213 to Osage (**Exhibit 3**, the "RSUI Policy"). The RSUI Policy includes a $5,000,000 per occurrence limit. The RSUI Policy is a "follow form" policy to the AXIS Policy and, by extension, the Indian Harbor Policy.

16. Osage carries a third layer of excess liability insurance over RSUI, which is split between Hamilton and Colony. Hamilton issued Commercial Excess Liability Policy No. ENGXSHI233962 to Osage (**Exhibit 4**, the "Hamilton Policy"). The Hamilton Policy includes a $7,500,000 per occurrence limit. Colony issued Commercial Excess Liability Policy No. AR6461794 to Osage (**Exhibit 5**, the "Colony Policy"). The Colony Policy has a $7,500,000 per occurrence limit. Together, these policies provide $15,000,000 in third-layer excess liability insurance. Both the Colony Policy and the Hamilton Policy are "follow form" policies to the Indian Harbor Policy, the AXIS Policy, and the RSUI Policy.

17. Osage's policies provide a total of $26,000,000 in limits. As of April 2023, Osage has incurred $36,098,340.27 in sums that Osage was legally obligated to incur and pay as damages because of third party property damage from the Pipeline Incident.

18. As a result, this loss exceeds the limits of Osage's insurance. Osage has incurred additional costs since April 2023 and expects to incur more costs in the future.

19. Osage promptly notified each of its insurers about the claim. Both Indian Harbor and AXIS paid Osage the full $6,000,000 of combined limits under their policies.

20. Since the Indian Harbor and AXIS Policies have been exhausted, RSUI's obligations to Osage have been triggered.

21. But RSUI refused to provide reimbursement to Osage, even though the lower-layer "follow form" insurers have deemed the Pipeline Incident a limits-loss.

22. Upon exhaustion of the RSUI Policy, Hamilton and Colony will owe Osage under their policies.

### a) The RSUI Policy

23. RSUI promised to reimburse Osage for certain losses.

> SECTION I – EXCESS LIABILITY INSURANCE
>
> 1. Insuring Agreement
>
>    a. We will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the "Underlying Insurance" also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

RSUI Policy at 20.[1]

24. The RSUI Policy also states "This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "Underlying Insurance[.]" *Id.*

---

[1] All citations to the insurance policies attached to this Complaint are to the bates labels that Osage attached to the bottom of the policies.

25.     In the RSUI Policy, "'Underlying Insurance' means the policies or self-insurance listed in the Schedule of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations[.]" *Id*. at 21.

26.     The RSUI Policy lists the AXIS Policy as the lead excess policy in its Schedule of Underlying Insurance. *Id.* at 3. The AXIS Policy provides that the Indian Harbor Policy is the primary (followed policy) in its Schedule of Underlying Insurance. AXIS Policy at 8. As a result, both the AXIS Policy and the Indian Harbor Policy qualify as "Underlying Insurance," as defined in the RSUI Policy.

27.     This means that the RSUI Policy follows "the same terms, conditions, agreements, exclusions and definitions" of the AXIS Policy, which follows the Indian Harbor Policy. Thus, the language in the Indian Harbor Policy controls this dispute.

  b) *The Indian Harbor Policy*

28.     The Indian Harbor Policy promised to "pay those sums that [Osage] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Indian Harbor Policy at 18.

29.     And both Indian Harbor and AXIS did pay the limits of their policies to Osage in accordance with this promise.

30.     But RSUI rejected that. Instead, RSUI contends that the Indian Harbor Policy's Pollution Exclusion applies even though both Indian Harbor and AXIS paid despite the existence of this exclusion.

31. In relevant part, the Pollution Exclusion provides:

> **ENERGY, OIL AND GAS POLLUTION EXCLUSION – EXCEPTION FOR EXTENDED TIME ELEMENT**
>
> \* \* \*
>
> [This insurance does not apply to:]
>
> **f. Pollution**
>
> \* \* \*
>
> **(2)** Any loss, cost or expense arising out of any:
>
> **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or:
>
> **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".
>
> *However, this paragraph does not apply to liability for* damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

Indian Harbor Policy at 65–67 (italics added).

32. Section f.(2) of the Pollution Exclusion does not apply because the costs Osage incurred did not arise out of any "[r]equest, demand, order or statutory or regulatory requirement[.]" Those costs were instead incurred because Osage had obligations under its right-of-way and other easement agreements, as well as duties under state and federal

common law, to contain, mitigate, and remediate third party property damage caused by the Pipeline Incident.

33. Even if Section f.(2) of the Pollution Exclusion applies, the exception to Section f.(2) also applies because Osage had "liability for damages because of 'property damage'" in the absence of a request, demand, order or statutory or regulatory requirement, or a claim or "suit" by or on behalf of a governmental authority, including liability to fulfill its obligations under its right-of-way and other easement agreements, as well as liability under state and federal common law.

### c) The Hamilton and Colony Policies

34. The Hamilton Policy provides in relevant part:

> **SECTION I. INSURING AGREEMENT**
> 1. We will pay those sums in excess of the limits shown in the Schedule Of Underlying Insurance that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable Limits Of Insurance.
> 2. This policy is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance[.]"

Hamilton Policy at 33.

35. The Colony Policy provides in relevant part:

> The insurance provided under this policy will follow the same provisions, exclusions and limitations that are contained in the applicable underlying insurance, unless otherwise directed by this insurance.

Colony Policy at 11.

36. Because like the RSUI Policy, the Hamilton Policy, and the Colony Policy follow form to the Indian Harbor Policy, upon exhaustion of the RSUI Policy, Hamilton and Colony must reimburse Osage for damages incurred due to the Pipeline Incident.

### III. The Loss

37. Osage has provided Defendants with extensive claim data documenting more than $30,000,000 of the sums that Osage was legally obligated to pay as damages because of third party property damage from the Pipeline Incident.

### IV. RSUI's Breach

38. RSUI promised to reimburse Osage for the sums that Osage was legally obligated to pay as damages because of third party property damage from covered occurrences, such as the Pipeline Incident.

39. RSUI wrongfully denied coverage to Osage, claiming that the insuring agreement of the RSUI Policy was not satisfied, that the loss was excluded by Section f.(2) of the Pollution Exclusion, and that even if the exception to Section f.(2) of the Pollution Exclusion applied, the measure of damages for Osage's liability under state law (and thus its right to reimbursement) was limited to the value of the land where the third party property damage occurred. RSUI then claimed that since the tax appraisal for that land was $44,500, it "appears unlikely" it would owe reimbursement for the loss. *See* **Exhibit 6**, letter from RSUI to Osage dated March 2, 2023 at 5.

40. Osage informed RSUI that it was entitled to be reimbursed for the sums that it was legally obligated to pay as damages because of property damage from the Pipeline

Incident for several reasons, including that Indian Harbor and AXIS had paid the limits of their policies, and that RSUI had failed to address a number of issues such as the tribal relationship to the land where the Pipeline Incident occurred and federal law. In response, RSUI sued Osage in the Northern District of Texas and then voluntarily dismissed that lawsuit without prejudice prior to Osage's deadline to respond to the Complaint. Colony intervened in that action, and it likewise dismissed its Complaint in Intervention without prejudice prior to Osage's deadline to respond.

41. In its coverage determination, and in the allegations of its now-dismissed lawsuit, RSUI relied on state law and ignored the fact that the land where the Pipeline Incident occurred is restricted tribal land that may not be freely sold. Because it is restricted tribal land, federal common law applies, so the proper measure of damages is the cost to restore that land to its prior condition (rather than the value of the land as RSUI claimed).

## COUNT I
## DECLARATORY JUDGMENT AGAINST ALL DEFENDANTS

42. Osage respectfully incorporates by reference the above allegations.

43. An actual controversy exists between Osage and RSUI, Hamilton, and Colony regarding their respective rights and duties under the RSUI Policy, the Hamilton Policy, and the Colony Policy. 28 U.S.C. § 2201. Osage requests the following judicial declarations, which will eliminate this controversy:

    i. That Section f.(2) of the Pollution Exclusion does not apply to the Pipeline Incident.

    ii. That even if Section f.(2) of the Pollution Exclusion applies, then the exception to Section f.(2) also applies because Osage had "liability for damages because of 'property damage'" in the absence of a request,

10

       demand, order or statutory or regulatory requirement, or a claim or "suit" by or on behalf of a governmental authority.

   iii.   That, because the Pipeline Incident involves restricted tribal land, federal common law applies so the proper measure of damages is the cost to restore that land to its prior condition.

   iv.   That RSUI must reimburse Osage under the RSUI Policy for all sums that Osage was legally obligated to pay as damages because of property damage from the Pipeline Incident, up to the limits of the RSUI Policy.

   v.   That upon exhaustion of the RSUI Policy's limits, Hamilton and Colony will be liable for their pro rata share of Osage's further liability until the limits of the Hamilton Policy and the Colony Policy are exhausted.

## COUNT II
## BREACH OF CONTRACT AGAINST RSUI

44.   Osage respectfully incorporates by reference the above allegations.

45.   The RSUI Policy is a valid contract between Osage and RSUI.

46.   To the extent required by law, Osage has performed all of its duties and responsibilities and satisfied all conditions precedent to an entitlement to payment under the RSUI Policy, including paying the premiums for the RSUI Policy.

47.   RSUI breached the RSUI Policy by, among other reasons, failing to reimburse Osage for covered losses.

48.   As a direct result of RSUI's breach of contract, Osage has been damaged in an amount to be determined at trial, but in no event less than $5,000,000.

49.   Osage seeks and is entitled to recover its reasonable and necessary attorneys' fees in this matter under Section 38.001(8) of the Texas Civil Practice and Remedies Code.

## JURY DEMAND

50. Osage demands a trial by jury on all claims so triable.

## PRAYER

**WHEREFORE**, Osage respectfully requests that the Court:

A. Issue the requested declarations in Count I;

B. Award Osage damages in Count II in an amount to be determined at trial but in no event less than $5,000,000 plus interest;

C. Award Osage its reasonable and necessary attorneys' fees due to RSUI's breach of contract in Count II;

D. Award Osage such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Stephen L. Jantzen*
Stephen L. Jantzen
RYAN WHALEY PLLC
Oklahoma Bar No. 16247
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
Tel: 405.239.6040
sjantzen@ryanwhaley.com

Vincent E. Morgan
Suzanne F. Day
William E. Mahoney
BRACEWELL LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Tel: 713.223.1450
vince.morgan@bracewell.com
suzanne.day@bracewell.com
william.mahoney@bracewell.com
(*pro hac vice* applications forthcoming)

**Attorneys for Plaintiff**

12