UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **OSAGE PIPE LINE COMPANY, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-23-592-G |
| | ) |
| **RSUI INDEMNITY COMPANY et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Now before the Court is Defendant RSUI Indemnity Company's ("RSUI") Motion to Dismiss (Doc. No. 23), seeking to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff Osage Pipe Line Company, LLC ("Osage") has responded in opposition (Doc. No. 32). RSUI has replied in further support of its Motion (Doc. No. 35).

### LEGAL STANDARD

"A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction takes one of two forms: a facial attack or a factual attack." *Bollenbach v. United States*, No. CIV-19-233-G, 2020 WL 1550196, at *2 (W.D. Okla. Mar. 31, 2020) (citing *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)). Here, RSUI advances a facial attack, arguing the allegations in the Complaint do not support the Court's exercise of subject-matter jurisdiction. *See* Def.'s Mot. at 3. "In reviewing a facial attack, a district court confines its analysis to the pleadings and must accept the allegations in the complaint as true." *Bollenbach*, 2020 WL 1550196, at *2. Osage, as the party asserting federal

jurisdiction, bears "the burden of alleging the facts essential to show jurisdiction and supporting those facts with competent proof." *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797-98 (10th Cir. 2002) (internal quotation marks omitted).

## BACKGROUND

### A. *The Oil Spill*

On July 8, 2022, Osage's pipeline burst, spilling crude oil into Skull Creek in Payne County, Oklahoma (the "Oil Spill"). *See* Compl. (Doc. No. 1) ¶ 10. The Oil Spill occurred within the historical boundaries of the Sac and Fox Nation, a federally recognized Indian tribe, on restricted tribal land[1] owned by a Sac and Fox Nation member (the "Restricted Land"). *See id.* ¶ 1. Osage claims it has incurred $36,098,340.27 in liabilities related to cleaning up the Oil Spill. *See id.* ¶¶ 17, 41.

### B. *Osage's Insurers*

Osage carried one primary liability insurance policy and three layers of excess liability insurance. The primary liability policy was issued by Indian Harbor Insurance Company ("Indian Harbor") and has a per occurrence limit of $1,000,000 (the "Indian Harbor Policy"). *See id.* ¶ 13. The first-layer excess liability policy was issued by AXIS Surplus Insurance Company ("AXIS") and has a per-occurrence limit of $5,000,000 (the "AXIS Policy"). *See id.* ¶ 14. The AXIS policy is a "follow-form" policy, meaning that it generally tracks "the terms, conditions, exclusions, definitions, and endorsements of the

---

[1] Also known as restricted fee lands, restricted tribal lands "are owned by a tribe or tribal member but are subject to a restriction against alienation (i.e., sale or transfer) or encumbrance (i.e., liens, leases, rights-of-way, etc.) by operation of law." Mariel J. Murray, Cong. Rsch. Serv., IF11944, Tribal Lands: An Overview 1 (2021).

Indian Harbor Policy." *Id.* The second-layer excess liability policy was issued by RSUI, is follow-form to the AXIS Policy, and has a $5,000,000 per occurrence limit. *See id.* ¶ 15. The third-layer excess liability insurance was covered by two policies issued by Defendants Hamilton Insurance DAC ("Hamilton") and Colony Insurance Company ("Colony") (together, the "Third-Layer Policies")—each having a per-occurrence limit of $7,500,000 and follow-form to the RSUI Policy, AXIS Policy, and Indian Harbor Policy. *See id.* ¶ 16. Combined, the primary policy and the excess liability insurance provided $26,000,000 in coverage. *Id.* ¶ 17.

### C. RSUI's Claim Denial

Osage promptly notified its insurers of the Oil Spill. *See id.* ¶ 19. After Indian Harbor and AXIS paid the maximum under their respective primary and first-layer policies, Osage turned to RSUI for second-layer coverage (the "Claim"). *See id.* ¶ 20. RSUI refused to pay, contending that the Oil Spill was not covered under the RSUI Policy. *See id.* ¶¶ 21, 39. And because RSUI has not paid, Hamilton and Colony have not paid under their third-layer policies. *See id.* ¶ 22.

Because the RSUI Policy is follow-form to the AXIS Policy—which is itself follow-form to the Indian Harbor Policy—the Indian Harbor Policy's "terms, conditions, agreements, exclusions and definitions" govern the RSUI Policy. *See id.* ¶ 27. The Indian Harbor Policy contains the following exclusion (the "Pollution Exclusion"):

> **ENERGY, OIL AND GAS POLLUTION EXCLUSION –
> EXCEPTION FOR EXTENDED TIME ELEMENT**
>
> \* \* \*
>
> [This insurance does not apply to:]
>
> **f. Pollution**
>
> \* \* \*
>
> (2) Any loss, cost or expense arising out of any:
>
>   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or:
>
>   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

*Id.* ¶ 31 (alteration in original). The Pollution Exclusion is qualified by the following paragraph (the "Pollution Exclusion Exception"):

> *However, this paragraph does not apply to liability for* damages because of "property damage" that the insured would have in absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority."

*Id.*

In denying Osage's Claim, RSUI asserted: (1) the Pollution Exclusion applies to the Claim; and (2) even if the Pollution Exclusion Exception applied, state law would limit Osage's Oil Spill Liability to the "difference in fair market value of the property when the cost to restore the property exceeds the fair market value of the property." Compl. Ex. 6, RSUI Letter (Doc. No. 1-6) at 6; *see* Compl. ¶ 39. Because the Restricted Land had been appraised at $44,500, RSUI contended that it would be "unlikely" that its excess liability

4

policy—which only provided coverage after the exhaustion of the Indian Harbor Policy and AXIS Policy's combined $6,000,000 in coverage—would apply. *See* RSUI Letter at 6.

*D. The Instant Litigation*

In this action, Osage seeks: (1) damages arising from RSUI's breach of contract; and (2) declaratory relief as to the rights and obligations of Osage, RSUI, Hamilton, and Colony. *See* Compl. ¶¶ 42-49. Osage argues that the Pollution Exclusion does not apply to its Claim or, alternatively, that the Pollution Exclusion Exception applies to its Claim and that its Oil Spill Liability[2] is determined by reference to federal common law and not state law because the Oil Spill took place on restricted tribal land. *See id.* ¶¶ 39-41. Which law controls is significant because, according to Osage, state law would cap the Oil Spill Liability at the value of the Restricted Land (approximately $44,500), whereas federal common law would tie the Oil Spill Liability to the cost to restore the Restricted Land to its prior condition (approximately $36,000,000). *See* Pl.'s Resp. at 6-7. Regardless of which damage model would apply, Osage has already spent more than $36,000,000 to clean up the Oil Spill and now seeks to collect from its insurers. *See id.* at 6.

DISCUSSION

RSUI moves to dismiss for lack of subject-matter jurisdiction. *See* Def.'s Mot. at 1. There being no basis for diversity jurisdiction, Osage asserts that the Court's jurisdiction lies under 28 U.S.C. § 1331 because Osage's right to recover on its state-law breach of

---

[2] "Oil Spill Liability" refers to the "property damage" contained in the Pollution Exclusion Exception.

5

contract claim "necessarily depends on the resolution of a substantial and disputed federal issue"—i.e., whether Osage's Oil Spill liability is measured according to state law or federal common law.  Pl.'s Resp. at 5.

A. *The Breach of Contract Claim*

United States district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In general, such federal-question jurisdiction is invoked by plaintiffs pleading a cause of action created by federal law.  In rare cases, however, federal courts may have jurisdiction over state-law claims that implicate significant federal issues.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Sometimes referred to as the "substantial question doctrine," this principle recognizes that questions of state law with embedded federal-law issues may sometimes "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.*; *see Dutcher v. Matheson*, 733 F.3d 980, 987 n.6 (10th Cir. 2013).  Jurisdiction under the substantial question doctrine "is exceedingly narrow" and covers only "a special and small category of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012) (internal quotation marks omitted).  Furthermore, the "mere need to apply federal law in a state-law claim" will not "suffice to open the 'arising under' door."  *Grable & Sons*, 545 U.S. at 313.

To establish § 1331 federal-question jurisdiction under the substantial question doctrine, "a state-law claim (1) must necessarily raise a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities."  *Devon Energy*

6

*Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1208 (10th Cir. 2012). A federal question is necessarily raised when a claim "necessarily turns upon, or requires a court to construe," federal law. *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1028 (10th Cir. 2012). Accordingly, "it is well established that a claim supported by alternative theories in the complaint may not form the basis for federal jurisdiction unless federal law is essential to each of those theories." *Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 85 (D.D.C. 2018) (alterations and internal quotation marks omitted); *see also Baker v. BDO Seidman, L.L.P.*, 390 F. Supp. 2d 919, 925 (N.D. Cal. 2005).

Here, Osage offers two theories of liability for its breach of contract claim. Osage's primary argument is that RSUI breached the RSUI Policy by applying the Pollution Exclusion, which Osage asserts does not encompass the Oil Spill. *See* Compl. ¶ 32. Alternatively, Osage argues that even if the Pollution Exclusion applies, the Pollution Exclusion Exception also applies, in which case the question of measuring the Oil Spill Liability according to state law or federal common law would become relevant. *See id.* ¶ 33. If the Court were to accept Osage's primary argument, it would have no occasion to consider a federal question. Because federal law therefore is not essential to each of Osage's theories of liability for its breach of contract claim,[3] federal-question jurisdiction does not lie for that claim. *See Inst. for Truth in Mktg.*, 321 F. Supp. 3d at 85.

---

[3] Because the Court finds Osage's claim does not necessarily raise a federal issue, it need not and does not decide whether the federal issue is actually disputed or substantial or whether adjudicating the claim would disturb the balance of federal and state judicial

7

*B. The Declaratory Judgment Act Claims*

In addition to its breach of contract claim, Osage seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, against RSUI, Hamilton, and Colony. *See* Compl. ¶¶ 42-43. The Declaratory Judgment Act does not itself "extend" or "confer jurisdiction upon federal courts." *Woods v. City & Cnty. of Denver*, 62 F. App'x 286, 289 (10th Cir. 2003). Rather, the statute merely "expand[s] the range of remedies available" to litigants in federal court. *See id.* Accordingly, the Court may not enter declaratory judgment without an independent basis for subject-matter jurisdiction. *See id.*

Because Osage has not provided a basis for federal subject-matter jurisdiction, the Court may not consider its request for a declaratory judgment. Accordingly, the Court dismisses Osage's claims for declaratory relief against all defendants. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."); *see also* Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

For the reasons set forth herein, Defendant RSUI Indemnity Company's Motion to Dismiss (Doc. No. 23) is GRANTED. Plaintiff's claims against this defendant are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

responsibilities. *See N.M. ex rel. Torrez v. Meta Platforms, Inc.*, No. 1:23-CV-01115, 2024 WL 413609, at *4 (D.N.M. Feb. 5, 2024).

IT IS FURTHER ORDERED that Plaintiff's claims against Defendants Hamilton Insurance DAC and Colony Insurance Company are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

A separate judgment shall be entered.

IT IS SO ORDERED this 26th day of September, 2024.

*/s/ Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge